**GRID SYSTEMS CORPORATION, and Tandy Corporation, Plaintiffs,**

v.

**TEXAS INSTRUMENTS INCORPORATED, et al., Defendants.**

**No. C–90–2571–DLJ.**

United States District Court, N.D. California.

May 14, 1991.

As corrected June 4, 1991.

Roger L. Cook, of Townsend and Townsend, and James G. Gilliland of Khourie, Crew & Jaeger, P.C., San Francisco, Cal., for plaintiffs.

Robert H. Rawson, of Jones, Day, Reavis & Pogue, Dallas, Tex., for defendant Texas Instruments Corp.

Mark E. Miller, of Fliesler, Dubb, Meyer & Lovejoy, San Francisco, Cal., for defendant Adaptec, Inc.

## ORDER

JENSEN, District Judge.

This motion to dismiss came on for hearing before this Court on May 1, 1991. For the reasons discussed below, Texas Instruments Incorporated's motion for dismissal is GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND.

The present motion to dismiss arises in the context of a dispute over the validity of licenses and patents covering certain electronic components commonly used in the manufacture of personal computers. This is the second motion to dismiss brought by defendant Texas Instruments Incorporated ("TI"). The first was resolved by Court's prior of December 28, 1990, (the "December 28 Order"). TI's second motion revisits the issues addressed in the December 28 Order in the context of a new complaint amended specifically to respond to the deficiencies identified in the December 28 Order. The facts are as follows.

Plaintiff Tandy Corporation ("Tandy") is a large producer and retailer of personal computers. Plaintiff GRiD Systems Corporation ("Grid"), which is a wholly owned subsidiary of Tandy, manufactures microprocessor-based products, including lap-top computers, which are retailed by Tandy.[1] Defendants Adaptec, Inc. ("Adaptec"), Street Electronics Corporation ("Street"), and Best Data Products, Inc. ("Best"), manufacture various computer components which are purchased by Tandy and Grid for

---

1. Unless otherwise specified, all further references to Tandy refer collectively to plaintiffs Tandy and Grid.

direct resale or use computers manufactured by Tandy and Grid. Defendant TI is a Texas based electronics firm which holds a substantial number of patents covering inventions and processes commonly used in the manufacture of personal and lap-top computers.

In a letter dated February 17, 1989, and in subsequent discussions, TI asserted that certain Tandy personal computer products infringe TI patents. *See* December 28 Order, at 2 (listing products and patents). After asserting infringement, TI allegedly demanded that Tandy and Grid enter into a license agreement with TI or face litigation. Negotiations ensued and representatives of TI, Tandy and Grid entered a license agreement (the "License Agreement"). The License Agreement covers the allegedly infringing Tandy and Grid products, and grants TI rights under various patents owned by Tandy.

Tandy and Grid now claim that TI's assertion of infringement and alleged imposition of the License Agreement was improper. As a result Tandy has brought the present action against TI and attacked the validity of TI's patents and the License Agreement.

In its first two claims, Tandy alleges that TI has violated sections 1 and 2 of the Sherman Act. 15 U.S.C. §§ 1 & 2. In its third and fourth claims Tandy requests a judicial declaration that either (1) certain TI patents are invalid, (2) Tandy products do not infringe these patents, or (3) Tandy has an implied license to use these products by acquiring them from other licensees, and this implied license "abates" Tandy's express License Agreement with TI. Finally, in its fifth and sixth claims Tandy asks for a judicial declaration that defendants Adaptec, Street, and Best, must indemnify Tandy under their contracts with Tandy for any royalty payments Tandy must make under its License Agreement with TI.

In the prior motion to dismiss defendants TI and Best moved to dismiss Tandy's first four claims against TI, and urged to the Court to decline pendent jurisdiction over Tandy's fifth and sixth claims against Adaptec, Street, and Best. In the lengthy

December 28 Order, the Court granted TI and Best's motion with leave to amend.

On January 30, 1991, Tandy filed its second amended complaint which attempts to cure the defects identified in the December 28 Order. TI now presents a new motion to dismiss which raises two issues. First, TI argues that the second amended complaint fails to live up to the terms of December 28 Order and should be dismissed with prejudice. Second, TI urges the Court to reconsider certain aspects of the analysis set out in the December 28 Order, and to either amend this analysis (resulting in the dismissal of parts of the new complaint) or to certify portions of the December 28 Order for immediate appeal.

Defendant Best has joined TI's present motion to dismiss. Defendant Adaptec joins Tandy's opposition to TI's motion, but only with respect TI's motion to dismiss Tandy's fourth claim for relief.

## II. THE APPLICABLE LEGAL STANDARD.

The standards governing a motion to dismiss were set out in the December 28 motion. For clarity, this discussion is repeated here.

 The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of his or her claim. "[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In the Ninth Circuit, the Court making this determination must assume that the plaintiff's allegations are true, construe the complaint in a light most favorable to the plaintiff, and resolve every doubt in the plaintiff's favor. *United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir.1981). Therefore, the Court will dismiss the complaint or any claim in it without leave to amend only if "it is 'absolutely clear that the deficiencies

of the complaint could not be cured by amendment.' " *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir.1987) (quoting *Broughton v. Cutter Laboratories,* 622 F.2d 458, 460 (9th Cir.1980) (per curiam).

 The level of specificity required in pleading a cause of action is regulated by Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). While conclusory allegations unsupported by any specific facts are not sufficient, *McCarthy v. Mayo,* 827 F.2d 1310, 1316 (9th Cir.1987), plaintiffs are not required to plead all their evidence in order to avoid dismissal under Rule 12. Under Rule 8, a claim will be sufficiently plead where it provides fair notice of the nature of claim and the facts which underlie the claim. *In re Genentech, Inc. Securities Litigation,* Fed.Sec. L.Rep. (CCH) ¶ 94,960, 1989 WL 201577 (N.D.Cal.1989); Wright & Miller, *Federal Prac. & Proc.: Civil* § 1215, pp. 109–110 (1969 ed.). Effective notice pleading should provide the defendant with a basis for assessing the initial strength of the plaintiff's claim, for preserving relevant evidence, for identifying any related counter- or cross-claims, and for preparing an appropriate answer.

## III. ANALYSIS.

### A. *Tandy's First Claim Based On The Violation Of Section 1 Of The Sherman Act.*

Tandy's first claim asserts a cause of action under section 1 of the Sherman Act, which bars contracts, combinations, or conspiracies in restraint of trade or commerce. 15 U.S.C. § 1 (hereinafter "Section 1"). TI now attacks this claim on two grounds: (1) Tandy has failed to live up to the requirements of the December 28 Order; and (2) TI repeats its prior argument that the per se rule cannot apply to patent license tying because it is never reasonable to infer that patent license tying has an anticompetitive effect.[2] The December 28 Order offers a broad based discussion of the per se rule as it has been augmented by recent authority, and this discussion is incorporated by reference here. With this background, we move directly to TI's arguments.

### 1. Tandy's Allegations Meet The Requirements Of The December 28 Order.

 In the December 28 Order, the Court concluded that Tandy's first claim for relief should be dismissed because, even when liberally construed, Tandy had failed to allege facts which could give rise to an inference of anticompetitive effects under the per se rule. In particular, the Court found that Tandy had not alleged a competitive market for the tied products. As a result, it was impossible to conceive of any set of facts where there could be anticompetitive effects in the market for the tied product.

Tandy argues that it has cured this defect through two amendments. First, Tandy now defines the tied product as TI licenses for "PC Implementation Technology." Second, Tandy alleges the existence of a market for "PC Implementation Tech-

---

**2.** In a third argument, TI suggests that recent amendments to statutory provisions regulating the defense of patent misuse in infringement suits have eliminated the per se rule in Section 1 anti-trust actions. *See,* 35 U.S.C. § 271(d)(5) (hereinafter, "section 271"). This argument is without merit.

On its face, Section 271(d) relates only to the defense of patent misuse as a defense to an infringement claim. TI argues that the legislative history merits a judicial extension of this statute into the area of anti-trust. Some legislators did favor such an exception. However, a full reading of the legislative record reveals that Congress rejected the extension despite this articulate support. Drake, *Patent Law: The Impact of the 1988 Patent Misuse Reform Act and*

*Noerr–Pennington Doctrine on Misuse Defenses and Antitrust Counterclaims,* 38 Drake L.Rev. 175 (1989). This history is adequately summarized by Mr. Calkins. "The primary thrust of the first part of Senate Bill 438 [which later became section 271] went beyond patent infringement actions and would have applied generally to all tie-in antitrust violations where the tying product was a patent or copyright.... Certain conclusions can be reach concerning Congress' rejection of Senate Bill 438. *First, the per se rule for Sherman Act tie-in cases (as enunciated in Loew's and Jefferson Parish) remains intact, and the presumption of economic power, when the tying product is a patent or copyright, survives." Id.,* (emphasis added).

nology" licenses in which TI competes with other licensors.[3] ¶ 20.[4]

Tandy's argument is persuasive. These allegations cure the defects identified in the December 28 Order.

### 2. It Is Reasonable To Infer That Anticompetitive Effects May Result From Patent License Tying.

■ Reiterating an argument asserted in support of its prior motion to dismiss, TI argues that it is never reasonable to infer that patent license tying has an anticompetitive effect. Thus, TI continues, "it is 'absolutely clear that the deficiencies [in Tandy's attempt to invoke the per se rule] could not be cured by amendment,'" and dismissal with prejudice is appropriate. *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir.1987) (quoting *Broughton v. Cutter Laboratories,* 622 F.2d 458, 460 (9th Cir. 1980) (per curiam).

To oversimplify a bit, TI argues that charging a high price for two tied patent licenses has no more anticompetitive effect than charging the same high price for the one tying license. Since it is established that TI may charge as high a price as the market will bear for any single patent, *Brulotte v. Thys Co.,* 379 U.S. 29, 33, 85 S.Ct. 176, 179, 13 L.Ed.2d 99 (1964), the Court should find here that charging the same high price for more than one patent cannot, standing alone, give rise to an inference of anticompetitive effects.

This argument is without merit. Two flaws merit particular attention.

First, as was mentioned in footnote 2 above, Congress has extensively considered and rejected the notion that an inference of anticompetitive effect cannot arise in patent and copyright cases under the per se rule. *See, supra* at 2 (discussing 35 U.S.C. § 271(d)(5)). This Court should not step in where Congress has refused to tread.

Second, as a practical matter it is possible to imagine anticompetitive effects that might result from patent tying. Tandy has alleged that it is a consumer in the competitive market for PC Implementation Technology licenses. Tandy has further alleged that under a tying arrangement, TI has forced Tandy to purchase licenses that it would not have purchased from TI under normal competitive market conditions. Tandy remains free to buy additional licenses from, say, IBM, as it would under normal competitive conditions. However, having purchased one set of licenses from TI, Tandy may rationally decide that it is not economically desirable, or economically possible, to spend additional money for substantially similar licenses from a competitor. As a consequence, IBM is denied a sale in a non-competitive fashion, and Tandy, in addition to receiving a high price, has achieved market power and a market position over IBM through non-competitive means.[5]

This hypothetical set of facts may well fail to appear in the evidence. Nonetheless, at the dismissal stage, it prevents the Court from using Rule 15 to bar the application of the per se rule, even if anticompetitive effects do not occur in the usual case.

---

**3.** This market is further defined as the market "for licenses to patents that claim technology covering the implementation of particular models of PCs, PC components, PC processes, peripheral devices and graphics display systems." Second Amended Complaint, at ¶ 20.

**4.** Unless otherwise specified, all further paragraph references are to the second amended complaint.

**5.** Other anticompetitive effects also can be imagined. Justice White identified some of the anti-competitive effects associated with tying in *Fortner Enterprises v. United States Steel Corp.,* 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969) (*Fortner I*): "The tying seller may be working toward a monopoly position in the tied product and, even if he is not, the practice of tying forecloses other sellers of the tied product and makes it more difficult for new firms to enter that market.... In addition to these anticompetitive effects in the tied product, tying arrangements may be used to evade price control in the tying product through clandestine transfer of profit to the tied profit; they may be used as a counting device to effect price discrimination; and they may be used to force a full line of products on the customer so as to extract more easily from him a monopoly return on one unique product in the line." *Id.* at 512–514, 89 S.Ct. at 1263–64 (J. White dissenting) (citations and notes omitted).

### 3. Conclusion.

For the reasons offered above neither of TI's arguments provide a persuasive basis for dismissing Tandy's first claim for relief, and TI's motion for dismissal will be denied.

### B. *Tandy's Second Claim Based On Section 2 Of The Sherman Act.*

Under § 2 of the Sherman Act, it is unlawful for any person to "monopolize, or attempt to monopolize, or combine to monopolize any part of trade or commerce." 15 U.S.C. § 2 ("Section 2"). As the Court noted in the December 28 Order, not all monopolies or attempts to form monopolies are illegal, and a monopoly which arises from the enforcement of a valid patent is a well-established example of legitimate monopoly power. *See Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.*, 339 U.S. 827, 834, 70 S.Ct. 894, 898, 94 L.Ed. 1312 (1950); *SCM Corp. v. Xerox Corp.*, 645 F.2d 1195, 1206 (2d Cir.1981) *cert. denied*, 455 U.S. 1016, 102 S.Ct. 1708, 72 L.Ed.2d 132 (1982). However, misuse of patent rights may amount to the sort of "willful" or "predatory" misconduct that would render a monopoly or attempted monopoly illegal under Section 2. *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966) ("willful"); *Twin City Sportservice, Inc. v. Charles O. Finely & Co.*, 676 F.2d 1291, 1308–09 (9th Cir.1982) *cert. den.* 459 U.S. 1009, 103 S.Ct. 364, 74 L.Ed.2d 400 (1982) ("predatory").

For example, the Supreme Court has stated that "the maintenance and enforcement of a patent obtained by fraud on the Patent Office may be the basis of an action under § 2 of the Sherman Act." *Walker Process Equip., Inc. v. Food Machinery & Chem. Corp.*, 382 U.S. 172, 174, 86 S.Ct. 347, 349, 15 L.Ed.2d 247 (1965). The Ninth Circuit has held that maintaining monopoly power by prosecuting patent infringement actions in bad faith may give rise to a violation of Section 2. *Handgards, Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1288, 1292–93 (9th Cir.1984). Finally, a scheme in violation of Section 1 involving the tying of patent licenses can establish the "willful" and "predatory" misconduct necessary for a violation of Section 2. *See Greyhound Computer Corp. v. International Business Machines Corp.*, 559 F.2d 488, 503–04 (9th Cir.1977) *cert. denied*, 434 U.S. 1040, 98 S.Ct. 782, 54 L.Ed.2d 790 (1978); *SmithKline Corp. v. Eli Lilly & Co.*, 575 F.2d 1056, 1065 (3rd Cir.1978) *cert. denied*, 439 U.S. 838, 99 S.Ct. 123, 58 L.Ed.2d 134 (1978).

In its second claim, Tandy has attempted to allege a violation of Section 2 by alleging all three kinds of misconduct just identified. TI moves to dismiss the second claim arguing that Tandy has not sufficiently alleged any relevant form of misconduct.

As an initial matter, the Court has already found that Tandy has sufficiently alleged illegal tying. Thus, Tandy's second claim will not be dismissed, and we are left only with the question of whether Tandy's allegations regarding fraud in the procurement and bad faith enforcement should be stricken from the complaint.

### 1. Fraud In The Acquisition Of Asserted Patents.

To allege a violation of Section 2 through fraud in the acquisition of a patent, Tandy must allege:

(1) "Knowing and willful fraud," *Walker Process Equip. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177, 86 S.Ct. 347, 350, 15 L.Ed.2d 247 (1965); *Kingsdown Medical Consultants v. Hollister, Inc.*, 863 F.2d 867, 876 (Fed.Cir.1988) (in the context of inequitable conduct attack on validity rejecting gross negligence and holding that the evidence of intent "must indicate sufficient culpability to require a finding of intent to deceive.")

(2) but for the fraud the affected patents would not have issued, *Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 265 (7th Cir.1984); *Jack Winter, Inc. v. Koratron Company, Inc.*, 375 F.Supp. 1, 67 (N.D.Cal.1974) (explaining in the context of an alleged *Walker Process* violation, "if one were entitled to a patent under the legal tests of patentability, there

is no illegal monopoly resulting from the [fraudulent] statements on which to base an anti-trust action." quoting *Corning Glass Works v. Anchor Hocking Glass Corp.*, 253 F.Supp. 461, 469 (D.Del.1966));

(3) "all the remaining elements necessary to establish a § 2 violation." *Ie.*, that by its fraudulent acquisition of patents, TI "monopolize[d], or attempt[ed] to monopolize, or combine[d] to monopolize any part of trade or commerce." 15 U.S.C. § 2; *Cataphote Corp. v. DeSoto Chem. Coatings, Inc.*, 450 F.2d 769, 778 (9th Cir.1971), *cert. denied*, 408 U.S. 929, 92 S.Ct. 2497, 33 L.Ed.2d 341 (1972).

■ Tandy's allegations substantially meet the pleading requirements of a *Walker Process* violation of Section 2. First, Tandy has alleged as follows regarding "knowing and willful fraud." In 1969 and 1970, Intel Corporation developed a single chip general function central processing unit ("CPU"). The 1970 design included an 8 bit parallel path microprocessor. Sometime in 1970, TI engineers became aware of the Intel designs and knowingly incorporated them into a design for a similar single chip CPU. In August of 1971, TI submitted patent applications based on the single chip CPU design that had originated at Intel. In these applications, "TI concealed from the United States Patent Office Intel's prior invention of the single chip CPU that transfers and processes data in parallel format." ¶ 13.

TI correctly points out that the term "concealed," standing alone, does not allege "knowing and willful" deceit or a clear "intent to deceive" as these terms have been defined in *Walker Process* and *Kingsdown*, respectively. *Walker Process*, 382 U.S. at 177, 86 S.Ct. at 350; *Kingsdown*, 863 F.2d at 876. Allegations that TI merely "concealed" Intel's prior art and TI's adoption of this prior art in its own design leave room for the possibility that TI negligently or inadvertently concealed these

facts, and under *Walker Process* and *Kingsdown*, mere negligent or inadvertent concealment would not be enough to state a Section 2 violation. *Id.*

However, this deficiency in Tandy's pleading is insubstantial. Under Rule 9(b), intent and knowledge "may be averred generally." Consequently, dismissing Tandy's *Walker Process* allegations for failure to sufficiently allege intent would only lead to the addition of one or two conclusory terms to the text of the complaint. To avoid burdening counsel and their clients with this sort of busy-work, the Court will deem Tandy's allegation of "concealment" to be equivalent to the conclusory allegation of intent under the terms of *Walker Process* and *Kingsdown*.

Second, with regard to causation, Tandy has pled that "as a result" of the alleged fraud, the patents in question were issued by the Patent Office. This allegation exceeds "but for" causation and approaches the language of "direct causation" typically adopted in allegations of proximate cause. This allegation is sufficient to state a *Walker Process* violation of Section 2. It is important to note here that Tandy's allegations have closed the causal gap described in the December 28 Order, and all of the patents identified by Tandy resulted from the alleged fraudulent applications either directly or indirectly and divisional or continuation-in-part patents.

Finally, Tandy has plead that the result of TI's fraudulent acquisition of patents has been that "TI has monopolized, combined with ... others to monopolize, and has attempted to monopolize the PC Architecture Technology Market[.]"[6] ¶ 42. This allegation sufficiently alleges the "remaining elements" of a Section 2 violation.

TI complains that Tandy's market power allegation is conclusory, and fails to identify the precise form and degree of market power arising from the each of the allegedly illegal patents. While accurate, this criticism does not affect the sufficiency of Tandy's complaint. Tandy's allegation

---

**6.** This market is further defined as the market "for licenses to patents that claim a general purpose computing system utilizing a single semiconductor chip CPU which transfers and processes data." ¶ 19.

meets the notice requirement of Rule 8, and Tandy is not further required to plead its evidence in the complaint.

TI also complains that Tandy's allegation that the illegal patents form basis for a monopoly, attempt to monopolize, or combination to monopolize, conflicts with other allegations that TI's market power results from the "number, importance and/or uniqueness" of all its PC patents, including many that were legally obtained. ¶ 28. This criticism is meritless. It is well established that a plaintiff may offer conflicting allegations in the alternative in his complaint. *See e.g., Molsbergen v. United States,* 757 F.2d 1016, 1018, n. 3 (9th Cir. 1985).

For the reasons offered above, Tandy's *Walker Process* allegations should not be stricken from the complaint.

### 2. Bad Faith Enforcement Of Patents.

■ To state a claim for a Section 2 violation based on the bad faith enforcement of a patent Tandy must allege that (1) TI had actual knowledge that certain patents were invalid; (2) TI attempted to enforce these patents with the specific intent to monopolize, attempt to monopolize, or combine with others to monopolize, the relevant market; and (3) TI has succeeded in gaining monopoly power, or "that a dangerous probability of success exist[s]." *Handgards, Inc. v. Ethicon, Inc.,* 743 F.2d 1282, 1288 (9th Cir.1984) (*"Handgards II"*); *Handgards, Inc. v. Ethicon,* 601 F.2d 986, 994–96 (9th Cir.1979) (*"Handgards I"*).

TI's only criticism of Tandy's allegation in support of a *Handgards* claim is that Tandy has not sufficiently alleged the first element: Actual knowledge. As we have already discussed with regard to Tandy's *Walker Process* claim, Tandy has alleged that TI had actual knowledge that the patents at issue here were acquired through fraud. This establishes actual knowledge of invalidity with regard to Tandy's *Handgards* claim. Thus, Tandy's *Handgards* allegations should not be stricken.

### 3. Conclusion.

For the foregoing reasons, Tandy has sufficiently alleged violations of Section 2 by illegal tying, fraudulent acquisition of patents, and bad faith enforcement of patents. TI's motion to dismiss Tandy's second claim will be denied entirely.

### C. *Tandy's Third Declaratory Relief Claim For A Finding Of Patent Invalidity And Non–Infringement.*

TI attacks Tandy's third claim in two ways. First, TI argues that Tandy's allegations in its third claim fail to meet the requirements of Rules 8 and 9. Second, Tandy urges the Court to reconsider its prior finding that Tandy's third claim is justiciable. We treat these in order.

### 1. Tandy's Allegations Do Not Meet The Requirements Of Rules 8 and 9.

Tandy's allegation must be considered in two groups. First in paragraph 47, subparagraphs (c), (d), (f) and (g), Tandy incorporates the fraud allegations made in support of its antitrust claims. In the same paragraphs Tandy reforms these allegations into an invalidity claim based on, *inter alia,* the inequitable conduct doctrine and statutes imposing a duty of candor.[7] For the reasons already stated with regard to Tandy's first two claims for relief, these incorporated factual allegations meet the requirements of Rules 8 and 9.

After properly incorporating its prior fraud allegations, however, Tandy offers a second group of allegations that is more problematic.

■ For example, the first sentence of paragraph 47 identifies nine TI patents, and the second alleges that all of these patents are invalid for "one or more" of the reasons stated in the following subparagraphs. Tandy has made no effort to link patents with defects despite Tandy's admission that only one or two defects apply to each individual patent.

This sweeping allegation fails to meet the "fair notice" requirement of Rule 8. Given the length of Tandy's list of defects, Tandy's failure to match particular defects

---

7. 37 C.F.R. § 1.56; 35 U.S.C. § 6.

with specific patents reduces the meaning of paragraph 47 to a general allegation that each patent is defective, period. Tandy cannot begin to preserve relevant evidence, identify related claims, or begin to prepare an answer on the basis of this generic allegation.

■ In addition, paragraph 47(a) alleges that nine TI patents, including four that Tandy has not associated with the alleged Intel design fraud, are invalid because of "TI's failure to comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and 112." This pleading is radically insufficient. Even if, as Tandy argues, Tandy could state a claim by simply pleading the language of these statutes, Tandy cannot state a claim by pleading the citation. More importantly, conclusory pleading of the statutory language is insufficient to meet the fair notice requirement of Rule 8 in the present context. Given the complexity of the processes at issue, and the close interrelation between many of the patents controlled by TI, TI cannot assess the strength of Tandy's claims, begin to preserve relevant evidence, or identify related claims or cross-claims without some indication from Tandy of the factual basis for its invalidity claims with regard to each patent.

For the foregoing reasons, paragraph 47 will be stricken from the complaint and the third claim will be dismissed with leave to amend. If Tandy chooses to amend and refile its third claim, Tandy must link each challenged patent with particular defects, and allege some factual basis for each alleged defect. With regard to the five patents connected with the alleged Intel design fraud, the requirement for factual allegations will be met by incorporation of the allegations which Tandy has alleged in connection with its above discussed anti-trust claims.

### 2. Tandy's Third Claim Remains Justiciable.

■ As the Court explained at length in the December 28 Order, the existence of a valid license agreement is not a bar to a declaratory relief action brought by a licensee challenging the validity of the patents held by the licensor. *C.R. Bard, Inc. v. Schwartz,* 716 F.2d 874, 880 (Fed.Cir.1983); *Lear, Inc. v. Adkins,* 395 U.S. 653, 671, 89 S.Ct. 1902, 1911, 23 L.Ed.2d 610 (1969). This rule reflects the determination of the Federal Circuit and the Supreme Court that the public's interest in the elimination of invalid patents outweighs the licensor's interest in the reliability of his license contract. *Id.*

Thus, where the "totality of the circumstances" demonstrates a sufficient apprehension of the pendency of a dispute to guarantee the sharp presentation of issues essential to the proper functioning of adversary proceedings, a licensee may bring a declaratory relief action for patent invalidity against a licensor despite the existence of a valid license agreement. *Id.; Aetna Life, Ins. Co. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937) (delineating the "actual controversy" requirement for declaratory relief actions). In applying the "totality of the circumstances" test the Federal Circuit has been careful to reject litmus tests and has emphasized that the unique facts of each case must be reviewed and judged separately. *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 735 (Fed.Cir. 1988) ("[T]there is no specific, all-purpose test.")

In the December 28 Order, the Court reviewed the entire record in this matter and held that the "totality of the circumstances" demonstrates that Tandy has a sufficient apprehension of suit to bring a declaratory relief action for patent invalidity in the form of its third claim for relief here. In the present motion, TI asks the Court to reconsider the December 28 Order and reverse its conclusion. TI's request will be denied.

As the Court noted in the December 28 Order, TI has repeatedly asserted infringement against a number of Tandy products. Moreover, TI is currently involved in parallel litigation against a number of companies that make products similar to Tandy's in the Northern District of Texas. Hence, TI's ability and willingness to litigate Tandy's third claim is well demonstrated.

The present proceedings regarding TI's second motion to dismiss have only confirmed the Court's view that Tandy's third claim is properly brought. At the heart of Tandy's third claim is the alleged Intel design fraud. This fraud is the same set of transactions and occurrences which the parties will necessarily be litigating in connection with Tandy's first two claims for antitrust violations. In fact, it is arguable that if Tandy failed to bring an invalidity claim in connection with its antitrust claims it might be barred from doing so later under the provisions of Rule 13. Alternatively, if the Court found Tandy's claim non-justiciable now, Tandy may never be allowed to try this claim because the factual questions critical to this claim will be resolved in the present suit, and might well bind a future separate proceeding addressing Tandy's third invalidity claim.

In light of the facts already identified in the December 28 Order, and the close connection between the Tandy's antitrust claims and Tandy's invalidity suit, the Court's prior conclusion that Tandy's third claim is justiciable was proper and will not be overturned.

### D. Tandy's Fourth Declaratory Relief Claim For An Implied License.

 The Court may exercise pendent jurisdiction over a claim arising under state law when: (1) the complaint asserts a valid claim arising under federal law; (2) the complaint asserts a claim arising under state law which shares "a common nucleus of operative facts" with the federal claim; and (3) the state law claim is such that a plaintiff "would ordinarily be expected to try them all in a single judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The Court's exercise of pendent jurisdiction is discretionary, and the Court may decline to exercise such jurisdiction in the interest of economy, convenience, and fairness to the parties. *Moor v. County of Alameda*, 411 U.S. 693, 716–17, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 596 (1973) (identifying discretionary factors).

 In its fourth claim for relief Tandy seeks a judicial "abatement" of its express License Agreement with TI. In particular, Tandy argues that it has acquired an implied license to many of the components covered by the License Agreement by purchasing these components from other licensees. Consequently, Tandy reasons, the Court should find that Tandy is not bound by the Licensing Agreement because Tandy mistakenly acquired by express contract rights it already had through the purchase of components from other licensees.

The meaning and effect of the TI–Tandy License Agreement is governed by state contract law. *See Consolidated World Housewares, Inc. v. Finkle*, 831 F.2d 261 (Fed.Cir.1987); *accord Diematic Manufacturing Corp. v. Packaging Industries, Inc.*, 381 F.Supp. 1057 (S.D.N.Y.1974). Thus, the only basis for jurisdiction over Tandy's fourth claim is the doctrine of pendent jurisdiction discussed above.

The Court declines to exercise pendent jurisdiction over the fourth claim. Tandy's fourth claim arises from Tandy's and TI's dealings with certain component suppliers. The fourth claim shares no common nucleus of operative facts with Tandy's first three claim, which arise primarily from the allegations of fraud in the acquisition of patents by TI.

Furthermore, accepting pendent jurisdiction of the fourth claim would not serve economy or fairness. Indeed, given the discrete factual basis of the fourth claim, appending the fourth claim to the present litigation would only enhance the likelihood of delay and confusion.

Because the Court declines pendent jurisdiction, Tandy's fourth claim will be dismissed.

### IV. CONCLUSION.

For the foregoing reasons, TI's motion to dismiss Tandy's first four claims is GRANTED IN PART AND DENIED IN PART. With regard to Tandy's first and second claims for relief, TI's motion is DENIED. With regard to Tandy's third claim, TI's motion is GRANTED WITH LEAVE TO AMEND. With regard to Tandy's

fourth claim, TI's motion is GRANTED WITHOUT LEAVE TO AMEND.

IT IS SO ORDERED.